AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

<table>
<tr><td>United States of America<br>v.<br>Michael Anthony Roundtree Jr. and<br>Daren Bernard Razz III</td><td>)<br>)<br>)<br>)<br>)<br>)</td><td>Case No.   20-mj-8277-DLB</td></tr>
<tr><td align="center"><i>Defendant(s)</i></td><td></td><td></td></tr>
</table>

FILED BY _____ SP _____ D.C.

**Aug 4, 2020**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ August 4, 2020 _____ in the county of _____ Palm Beach _____ in the _____ Southern _____ District of _____ Florida _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951 | Interference with commerce by threats or violence |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Dominick B. Healey, Special Agent
*Printed name and title*

~~Sworn to before me and signed in my presence.~~

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by FaceTime

Date: _____ August 5, 2020 _____

_____
*Judge's signature*

City and state: _____ WEST PALM BEACH, FLORIDA _____    DAVE LEE BRANNON, U.S. MAGISTRATE JUDGE
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**APPLICATION FOR SEARCH WARRANT AND COMPLAINT**

I, Dominick B. Healey, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since January 2019.  I also served on active duty as a Military Police lieutenant in the United States Army from December 2013 to March 2018.  As an FBI Special Agent, I am an investigator and law enforcement officer of the United States within the meaning of Rule 41(a)(2)(c) of the Federal Rules of Criminal Procedure.  I am also currently assigned to PB-2, the Violent Crimes and Major Offender Squad of the Palm Beach County Resident Agency.  I have primarily been assigned to investigations dealing with commercial robberies, bank robberies, stalking, and other violent crimes.  I have gained experience as a federal law enforcement officer and have received instruction and training in investigative techniques; including actual or attempted robbery or extortion affecting interstate or foreign commerce and conspiracies to commit these offenses, in violation of Title 18, United States Code, Section 1951.

2.      The facts set forth below are based upon my own personal observations, investigative reports, and information provided to me by other law enforcement agents.  I have not included in this affidavit all information known by me relating to the investigation, but only those facts sufficient to establish probable cause for the search warrant and complaint in support of which I submit this affidavit.

3.      I make this affidavit in support of an application for a search warrant and a complaint.  As described in this affidavit, there is probable cause to believe that Michael Anthony Roundtree Jr. and Daren Bernard Razz III have committed actual or attempted robbery

affecting interstate or foreign commerce and conspiracies to commit these offenses, in violation

of Title 18, United States Code, Section 1951. There is also probable cause to believe that

evidence , contraband, and property intended for use in the commission of these offenses, as

further described in attachment B, will be found at the locations described in attachments A1

and A2.

## PROBABLE CAUSE

4.      I and other law enforcement agents are investigating ten armed robberies and two

attempted armed robberies of auto supply and "dollar" stores in Palm Beach County.

5.      On August 12, 2019, at approximately 9:14PM, two unknown subjects entered

Advance Auto, located at 1920 S. Military Trail, West Palm Beach, FL. The two unknown

subjects, dressed in dark clothing and armed with a firearm, forced entry into the store by throwing

a large rock through the glass door. The unknown subjects held two employees at gunpoint while

they stole money from the store's sales safe. The suspects stole approximately $2,500 United States

currency.

6.      On August 17, 2019, at approximately 9:00PM, one unknown subject entered

Advance Auto, located at 1350 N. Federal Hwy, Delray Beach, FL. A store associate reported that

one black male unknown subject, 5'7" to 5'9", 150-170 pounds, armed with a revolver, forced entry

to the store by smashing the front door glass. The suspect demanded money from the store's safe

and proceeded to the back of the store, where he stole $1,310 United States currency.

7.      On September 4, 2019, at approximately 9:56PM, two unknown subjects entered

Dollar General, located at 1679 Kirk Rd, West Palm Beach, FL. Store employees reported that two

black male unknown subjects, who were armed with firearms and completely disguised in black,

entered the store and demanded money at gunpoint. They stole $3,500 United States currency from cash registers and a safe. The suspects fled via the southwest exit door, which was found ajar, and a vehicle was heard leaving the scene.

8.      On September 10, 2019, at approximately 10:30PM, two unknown subjects entered Family Dollar, located at 1206 S. Dixie Hwy, Lake Worth, FL. Two black male unknown subjects wearing dark clothing, black masks, and gloves, forced entry through the front door of the store and demanded money at gunpoint. A store employee told one of the unknown subjects that there was no money in the cash register, as it was secured in the store safe. The unknown subjects left without stealing anything from the business.

9.      On September 21, 2019, at approximately 10:47PM, an unknown subject entered Family Dollar, located at 1206 S. Dixie Hwy, Lake Worth, FL. A store clerk reported that an unknown subject, wearing black clothing, a dark face covering, and a single orange glove, forced entry through the store's front door. The subject ran behind the register bank, brandished a handgun, pistol-whipped the clerk, and stole $921 United States currency from the store safe.

10.      On September 26, 2019, at approximately 9:51PM, two unknown subjects entered Family Dollar, located at 5055 10th Ave. N, Greenacres, FL. Store employees reported that two masked and armed black male unknown subjects entered through the front door of the business. The unknown subjects pointed handguns at two store employees while demanding cash from the store's registers and safes. One subject was described as 5'11" medium build, and the other was described as 5'6"-5'7" medium build. They stole United States currency from the registers and two safes, as well as various merchandise items.

11.      On October 18, 2019, at approximately 8:00PM, two unknown subjects entered Advance Auto, located at 2377 N. Military Trail, West Palm Beach, FL. A store employee reported

the two black male unknown subjects, wearing black clothing and face coverings, entered the store through the front door and demanded money. The unknown subjects were armed with a black handgun and a revolver with a silver finish. The subjects stole $3000 United States currency from three cash registers and the store safe, as well as various merchandise items. They exited through the store's rear door.

12.     On October 21, 2019, at approximately 10:24PM, two unknown subjects attempted to enter Family Dollar, located at 1199 Hypoluxo Rd, Lantana, FL. Surveillance footage indicates that two black male unknown subjects, wearing dark clothing and face coverings, attempted to force entry through the store's front door by striking it with a concrete parking stopper. One subject is depicted wearing a black ball cap with a white logo.   The attempt to breach the door failed, as the store was equipped with hurricane windows, and the suspects left without further incident.  The suspects' path of escape was captured on local business CCTV cameras.  Footage from a nearby business to the East shows the subjects emerging on foot through a thick hedge.  The unknown subject that was previously wearing the black ball cap with a white logo is no longer wearing it in this footage. The following morning, an investigator canvased the path of escape depicted by the CCTV footage and recovered a black ball cap with a white LA Dodgers logo within the thick hedge. The cap was submitted for DNA testing.

13.     On January 14, 2020, at approximately 10:42PM, two unknown subjects entered Dollar General, located at 4595 South Military Trail, Lake Worth, FL. Surveillance and witness accounts indicate that two black male unknown subjects, wearing dark clothing and face coverings, confronted store employees as they were leaving the store to meet an Uber driver in the parking lot. The first unknown subject, armed with a revolver-type handgun, forced the employees back into the store at gunpoint.  The same subject then proceeded to the parking lot, removed the Uber

4

driver from his vehicle, and forced him into the store at gunpoint.  The second unknown subject locked the store's front door.  The unknown subjects then proceeded to steal $3827.75 from the store safe, as well as various merchandise items.  The unknown subjects fled on foot through the store's rear door.

14.     On January 26, 2020, at approximately 8:48PM, one unknown subject entered Family Dollar located at 4935 Southern Boulevard, West Palm Beach, FL. Surveillance indicates that the subject entered the store, then brandished a revolver-type handgun at two store employees. The subject directed one store employee behind the store's register bank, while the other employee locked the front door.  The subject then directed the other employee behind the store's register bank.  A nearby eyewitness called 9-1-1 and reported that store employees were observed inside the store with their hands up.  Local police arrived at the scene while the subject was placing items from the store safe into a black bag.  The subject observed the arrival of police and escaped on foot through the rear door of the store.

15.     On July 20, 2020, at approximately 9:42 PM, two unknown subjects entered the Dollar General located at 1679 Kirk Road, West Palm Beach, FL. A victim employee reported that the first unknown subject was a black male, approximately 5' 7" or 5' 8" in height, wearing a wrap covering his head and face, and armed with a silver pistol.  Another victim employee reported that the first unknown subject was a dark skinned male, approximately 5' 10" or 5' 11" in height, armed with a pistol, and wearing dark clothing that covered him from head to toe.  The subjects stole approximately $2,802.36 from the store safe and two cash registers, as well as various merchandise items. The unknown subjects took both employees' cell phones, placed the cell phones on a shelf, and bound the employees with plastic zip ties around their wrists before fleeing the scene.

16.     On August 4, 2020, at approximately 8:53 PM, two unknown subjects entered the Autozone located at 1722 North Military Trail. The subjects took the store employees' cell phones during the robbery and fled the business after stealing approximately $3000 United States currency.

17.     I believe that the same two persons committed each of the twelve above-described robberies and attempted robberies. This belief is founded upon similarities in the physical descriptions of the robbers given by witnesses and confirmed through surveillance photographs: dark clothing, dark face coverings, caps, and footwear. An unknown subject was observed wearing a black and white ball cap during the robberies described in paragraphs (5), (6), (7), (8), (10), and (12). An unknown subject was observed wearing what appears to be brown loafer-type shoes during the robberies described in paragraphs (5), (6), (7), (10), (11), (12), and (15). An unknown subject appears to have a consistent posture throughout the robberies, characterized by the way in which the subject holds his revolver-type handgun pointed at the ground with an extended right arm and protruding- chest. This posture is observed on surveillance footage during the robberies described in paragraphs (5), (6), (7), (8), (10), (11), (13), (14), and (15). This belief is additionally founded upon similarities in the method of each robbery's commission: forced entry by subject(s) armed with either a handgun or a revolver, between 8:00PM - 11:00PM, followed by demands for cash from the stores' registers and/or safes.

18.     On January 31, 2020, investigators received notification that a preliminary association was established through the Combined DNA Index System (CODIS), which associated the cap recovered from the scene of the robbery described in paragraph (12), which is also believed to have been worn by an unknown subject during the robberies described in paragraphs (5), (6),

6

(7), (8), (10), and (12), with a sample of blood on a t-shirt collected during a 2007 Palm Beach County Sheriff's Office case. The blood was listed as belonging to MICHAEL ROUNDTREE.

19.     In his DMV records, ROUNDTREE is listed as a black male, 5-foot-7-inches in height, which investigators believe to be the approximate height of the first unknown subject based on witness accounts and height comparisons with objects of known height depicted by CCTV footage.

20.     Around the same time, Department of Motor Vehicles records revealed that ROUNDTREE was the registered owner of a blue 2009 Mazda 6, four door, VIN 1YVHP81AX95M29192, bearing Florida license plate Z67HFS. ROUNDTREE's residence, as reflected in his DMV records, is 2160 Avenue C, Riviera Beach, FL, but investigators believe that ROUNDTREE still resides at his previous DMV record address, which is accurately described in attachment A1 (the "target location"). On more than four occasions in early February 2020, physical surveillance was conducted around ROUNDTREE's residence, the target location. At least four times, law enforcement officers observed a blue 2009 Mazda 6 bearing Florida license plate Z67HFS in the driveway of the residence.

21.     A license plate reader (LPR) search of vehicles in Florida bearing license plate Z67HFS revealed that a dark-colored sedan bearing Florida license plate Z67HFS was present less than a mile from the scene of the robbery described in paragraph (8), moving away from the scene of the robbery approximately three minutes after the commission of the robbery.

22.     Open-source research revealed that RAZZ is an associate of ROUNDTREE. One Facebook account believed to belong to RAZZ lists M. R. as a family member. Based on other records, I believe that M. R. is a relative of ROUNDTREE. The Facebook accounts believed to be belonging to RAZZ and ROUNDTREE publicly list numerous mutual friends.

23.     Department of Motor Vehicles records list RAZZ as a black male, 5' 6" in height, which investigators believe to be the approximate height of the second unknown subject based on witness accounts and height comparisons with objects of known height depicted by CCTV footage.

24.     Investigators established an LPR "Hotlist" for Florida license plate Z67HFS in order to receive notifications when the LPR system registered any new entries depicting the movement of a vehicle bearing that plate. Investigators originally intended to obtain a GPS tracking warrant for the vehicle, but the LPR system stopped registering regular movements of the vehicle on or around January 28, 2020. During subsequent physical surveillance of the target location, investigators observed a person believed to be ROUNDTREE working on the vehicle with the vehicle's hood raised. This led investigators to believe that the vehicle was temporarily or permanently disabled.

25.     On March 9, 2020, the LPR system registered the first "mobile scan" of Florida license plate Z67HFS since January 28, 2020. However, the accompanying LPR system photo suggested that the license plate was no longer affixed to a blue 2009 Mazda 6. A subsequent search of Department of Motor Vehicle records revealed that ROUNDTREE registered a new vehicle on March 18, 2020, a 1999 Ford Station Wagon, assigned Florida license plate Z67HFS and vehicle identification number 1FMZU32E2XUB10858.

26.     On March 20, 2020, the Honorable Bruce E. Reinhart issued a warrant authorizing the tracking of the 1999 Ford Station Wagon in case no. 20-8140-BER.

27.     On the night of April 11, 2020, the vehicle traveled momentarily to a Boynton Beach residence, then to a closed business park in the vicinity of 2445 Quantum Boulevard in Boynton Beach, Florida. The vehicle remained stationary in that parking lot from approximately 7:30 PM until 8:30 PM. There is a shopping plaza with a Dollar Tree store located across

Quantum Boulevard, approximately 1/3 of a mile Southwest from the location from where the vehicle was parked. That night, the Dollar Tree store closed at 8:00 PM. In this instance, the vehicle's pattern of travel closely resembles what investigators believe to have been the modus operandi of the robbery described in paragraph (13). During that robbery, investigators believe that one robber picked up the other robber, the robbers proceeded to park discretely nearby to the target "dollar" store briefly before it closed, the robbers surveilled the store on foot, and then the robbers ambushed the employees as they left the store for the night. The vehicle did not return to 2445 Quantum Boulevard, Boynton Beach, FL during the tracking period.

28.     At approximately 8:55 PM on the night of April 22, 2020, the 1999 Ford Station Wagon traveled Southbound into the Westgate neighborhood of West Palm Beach and proceeded to make several stops at stores and residences. At approximately 9:38 PM, the vehicle parked in the parking lot of a closed Advance Auto store located at 2377 N Military Trail, West Palm Beach, FL, and remained stationary until approximately 10:00 PM. The vehicle then left the Advance Auto parking lot, stopped momentarily in another nearby parking lot, and then proceeded back to Riviera Beach area. Advance Auto located at 2377 N Military Trail was previously robbed as described in paragraph (11). The target vehicle did not return to 2377 N Military Trail, West Palm Beach, FL during the tracking period. Investigators believe that the shared locations of the robberies described in paragraphs (7) and (8), as well as the robberies described in paragraphs (9) and (15), show a willingness by the robbers to commit multiple robberies of the same store.

29.     On May 6, 2020, Judge Reinhart issued a second warrant authorizing the tracking of the 1999 Ford Station Wagon bearing Florida tag Z67HFS in case no. 20-8176-BER. On May 15, 2020, the vehicle traveled from the Riviera Beach area at night to RAZZ's residence, and remained at the residence for approximately one hour before returning to the Riviera Beach area.

9

On June 12, 2020, the vehicle tracker in case no. 20-8176-BER began to exhibit atypical patterns of movement. On June 17, 2020, investigators discovered that the 1999 Ford Station Wagon had been involved in a serious collision, and was subsequently transferred to a tow yard. The 1999 Ford Station Wagon has not since been observed at the target location, leading investigators to believe that ROUNDTREE is no longer using that vehicle as a primary mode of transportation. As a result, vehicle tracking in case no. 20-8176-BER was terminated.

30.     During surveillance conducted between June 21, 2020, and June 29, 2020, investigators observed two vehicles parked in the driveway at the target location: a black Ford Explorer SUV bearing Florida tag NTSC36, which is accurately described in attachment A2 ("the target vehicle"), and a 2007 Dodge Charger. DMV records revealed that the target vehicle is registered to ROUNDTREE's spouse, AR, and the 2007 Dodge Charger is registered to ROUNDTREE. During physical surveillance on June 29, 2020, investigators observed ROUNDTREE and AR driving simultaneously to the target location, their shared residence, in separate vehicles. AR was driving the subject vehicle, while ROUNDTREE was driving the 2007 Dodge Charger. Investigators believed, based on this observation, that ROUNDTREE is primarily drove the 2007 Dodge Charger.

31.     On July 1, 2020, your honor authorized the tracking of the 2007 Dodge Charger in case no. 20-8230-DLB. On July 6, 2020, investigators began tracking the 2007 Dodge Charger. At approximately 6:20 AM on July 20, 2020, the vehicle tracker showed that the 2007 Dodge Charger traveled to the vicinity of a local repair shop in Riviera Beach, FL, and remained until approximately 4:30 PM. The vehicle then traveled North, briefly stopped twice, and eventually became stationary at the target location at approximately 5:00 PM. The vehicle tracker showed

that the 2007 Dodge Charger remained stationary for the remainder of July 20, 2020, and during the robbery described in paragraph (15).

32.     Following the robbery described in paragraph (15), an eyewitness at an adjacent structure to the robbery sight reported that he heard someone breaking the plastic fence between the structures and went outside.   He saw two subjects dressed in dark clothing getting into a dark blue family-style  van  before  traveling  north  on  Kirk Road.  Investigators  believe  that  the eyewitness may have observed the target vehicle, which is a black sport utility-type  vehicle (SUV).

33.     A license plate reader search of the target vehicle's assigned license plate for July 20, 2020 revealed that a black SUV bearing that license plate traveled Southbound passed a license plate reader in Riviera Beach, FL, at approximately 7:31 PM and later traveled Northbound past the same license plate reader in Riviera Beach, FL, at approximately 10:12 PM. A review of the CCTV footage of the robbery described in paragraph (15) revealed that the robbers exited the store at approximately 9:55 PM. The travel time between the site of the robbery described in paragraph (15) and the license plate reader is approximately 15 – 20 minutes. Based on these factors, investigators believe that the subject vehicle was used to perpetrate the robbery described in paragraph (15).

34.     On August 4, 2020, investigators tracking the target vehicle, noted that the vehicle began traveling West at approximately 5:51 PM. At approximately 6:06 PM, the vehicle arrived in the vicinity of RAZZ's residence.  At 6:10 PM, the vehicle tracker indicated that the vehicle departed and began to travel Southbound.

35.     At 6:40 PM, the vehicle arrived in the vicinity of Family Dollar located at 5055 10th Avenue North, Greenacres, Florida, which was previously robbed during the robbery

11

described by paragraph (9). At 7:20 PM, the vehicle departed and began driving Southeast, then later Northwest, eventually arriving at the vicinity of Autozone located at 1722 North Military Trail, West Palm Beach, Florida at approximately 8:07 PM. The vehicle parked across the street, and two unknown subjects exited the vehicle. The unknown subjects walked around in the vicinity of the store for some time before entering the store at 8:53 PM. Then, police aerial surveillance video recorded two unknown subjects depart the store via the rear door at approximately 9:01 PM, run directly to, and enter, the subject vehicle. At 9:02 PM the subject vehicle began moving, and surveillance teams followed it away from the store. Shortly thereafter, a police detective entered the Autozone store, where he confirmed that it had been robbed. The robbers used tactics similar to previous of the robberies, and stole approximately $3,000.00 United States currency.

36.     Investigators continued physical, aerial, and tracker surveillance of the subject vehicle which proceeded Northbound without stopping, later arriving at the target location at approximately 9:24 PM. Aerial surveillance video depicted two unknown subjects exit the vehicle. One subject approached the front door, did not enter, then proceeded to the rear yard of the house. Around the same time, the other subject retrieved an unknown item or items from the rear seat of the vehicle and also proceeded to the rear yard of the house. The two unknown subjects then gathered together in the backyard and proceeded to manipulate unknown objects with their hands.

37.     At this point, investigators suspected that the unknown subjects may have been disposing, or otherwise altering, evidence of a crime. Investigators also believed that evidence of the unknown subjects' identities would also be diminished if they were allowed to enter the residence and investigators lost continuous surveillance contact. Therefore, investigators moved

to take custody of the two unknown subjects. The unknown subjects observed law enforcement approaching and fled, both jumping over an adjacent fence towards a neighboring street. One unknown subject, later discovered to be MICHAEL ANTHONY ROUNDTREE JR ran from officers, but was caught and taken into custody. The other unknown subject, later discovered to be DAREN BERNARD RAZZ III, fled and crawled beneath a trailer, later surrendering to police when given commands.

38.     Underneath the trailer that RAZZ crawled under, investigators recovered a handgun and United States currency. While conducting a protective sweep and securing the scene pending issuance of a search warrant, investigators observed in plain view a pile of United States currency on a table in the residence's backyard and a grey backpack resembling the bag that can be observed in the CCTV surveillance video of the robbery described in paragraph (15).

39.     When ROUNDTREE was taken into custody, prior to being transported, investigators conducted a search incident to arrest. Among other items, investigators discovered a cell phone in a black case bearing the inscription "unicorn beetle" in ROUNDTREE's pocket. The phone was powered on, but locked.

40.     As noted above, investigators believe that the same people committed all twelve robberies and attempted robberies. Use of cell phones by criminals is very common today, as it is in society in general. Specifically, where multiple individuals must coordinate their actions, as here, cell phones provide a common mechanism for such coordination. In this case, in two instances, only one of the suspects entered the location. That fact increases the likelihood that the two individuals carried cell phones, because the second individual may have served as a lookout or getaway driver in those instances.

## SEARCHES OF ELECTRONIC DEVICES

41.     Based upon my training and experience, as well as consultations with other Special Agents, I know that computer data of the type described in attachment B can be stored upon different types of computers, electronic data storage devices, computer peripheral devices, communications devices, and recordable media of various types (hereinafter collectively referred to as "digital devices").

42.     I also know that even if electronic information is deleted by a user from a computer, the computer system previously used to store the deleted information often retains evidence of the deleted electronic information.  For example, remnants of files deleted by the user may still remain (in whole or in part) on the storage media because deletion of a file does not necessarily remove that data completely from the media.  Additionally, a suspect may try to conceal criminal evidence, as by sorting it in random order with deceptive file names.  This may require experts to examine all of the stored data to determine which particular files contain evidence or instrumentalities of crime.  This sorting process can take weeks or months depending upon the volume of data stored, and it would be impractical and invasive to attempt this kind of data search on site.

43.     Based on my knowledge, training and experience, as well as information related to me by agents and others involved in the forensic examination of digital devices, I know that during the search of any premises, particularly one involved in day-to-day commercial activities, it is not always possible to complete an on-site examination of the aforementioned computer equipment and storage devices for a number of reasons, including the following:

     a)     Searching computer systems and digital devices is a highly technical process that requires specific expertise and specialized equipment.  There are so many types of

14

computer hardware and software in use today that it is rarely possible to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, operating system, or software application being searched.

   b) The best practices for analysis of computer systems and other digital devices rely on rigorous procedures designed to maintain the integrity of the evidence and to recover "hidden," mislabeled, deceptively named, erased, compressed, encrypted, or password protected data, while reducing the likelihood of inadvertent or intentional loss or modification of data. A controlled environment, such as a law enforcement laboratory, is typically preferred to conduct such an analysis properly.

   c) The volume of data stored on many computer systems and other digital devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises. The hard drives commonly included in basic desktop computers are capable of storing millions of pages of text.

## AUTHORIZATION REQUEST

   44. Based on the foregoing, I request that the Court issue the proposed complaint and the proposed search warrant.

45.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to preserve the evidence presently contained therein.

Respectfully submitted,

Dominick B. Healey
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to by FaceTime
Pursuant to Fed. R. Crim. P. 4.1

on this ___5th___ day of August, 2020

DAVE LEE BRANNON
UNITED STATES MAGISTRATE JUDGE

16

**ATTACHMENT A1**
**Property to be searched**

110 West 32nd Court, Riviera Beach, Florida, including any yard, driveway, or curtilage. The property is further described as a single-family, one floor, shingle-roofed house, tan or brown in color with white trim.

**ATTACHMENT A2**
**Property to be searched**

One 2014 Ford Explorer, black in color, having Vehicle Identification Number 1FM5K7B83EGB88616 and displaying a Florida license plate bearing tag NTSC36.

**ATTACHMENT B**
**ITEMS TO BE SEIZED**

**Definitions**

The "target location" is 110 West 32nd Court, Riviera Beach, Florida, including any yard, driveway, or curtilage.

The "target vehicle" is a 2014 Ford Explorer, black in color, having Vehicle Identification Number 1FM5K7B83EGB88616.

An "electronic device" is any object capable of storing information in digital form, including, but not limited to, any cell phone, tablet, laptop computer, or electronic storage media.

A "target electronic device" is any electronic device found at the target location or in the target vehicle at the time this warrant is executed.

The "subject persons" are Michael Anthony Roundtree Jr., year of birth 1983, Social Security number ending in 2232 and Daren Bernard Razz III, year of birth 1980, Social Security number ending in 9743.

"Evidence" includes records, documents, images, communications, and audio- or video-recordings. In the context of electronic evidence, evidence also includes information and data.

"Including" means "including, but not limited to."

**Items to be seized**

This warrant authorizes a search of the target location, the target vehicle, and all target electronic devices for evidence related to any of the following subjects, whether that evidence is found in electronic or hard copy form:

1.      The locations of any subject person or the target vehicle on the following dates during a period of time beginning six hours before the listed time and continuing until six hours after the listed time, and the identity of any person who was present with a subject person or the target vehicle at any of those dates and times. All times given are for the Eastern time zone.

- August 12, 2019, at approximately 9:14PM
- August 17, 2019, at approximately 9:00PM
- September 4, 2019, at approximately 9:56PM
- September 10, 2019, at approximately 10:30PM
- September 21, 2019, at approximately 10:47PM
- September 26, 2019, at approximately 9:51PM
- October 18, 2019, at approximately 8:00PM

- October 21, 2019, at approximately 10:24PM
- January 14, 2020, at approximately 10:42PM
- January 26, 2020, at approximately 8:48PM
- April 11, 2020 from approximately 7:30PM through approximately 8:30PM
- July 20, 2020, at approximately 9:42 PM

2.      Clothing, including shoes, worn by and bags, including backpacks, used by any subject person or his or her associates or to which any such person has access, including photographs of such people in which clothing, bags, or backpacks are visible.

3.      Ownership, possession, or access to automobiles, including the make, model, tag number, VIN, color and physical characteristics of such automobile. This evidence includes photographs, titles, lease agreements, and rental contracts of and for automobiles.

4.      Ownership, possession, or access to firearms or items that appear to be firearms, including all identifying information and physical characteristics of such firearms. This evidence includes photographs and receipts for of firearms.

5.      Possession or access to large sums of cash, other valuables and assets, and stolen property, including photographs of such items.

6.      Knowledge about, inquiries regarding, interest in, presence at, or association with any convenience or phone stores or restaurants.

7.      Robberies and thefts.

8.      The identity of any person who owns or has used or possessed any target electronic device, including contact information and photographs of such persons on the device, receipts for the purchase of the device, or bills for cellular service.

9.      The cell phone number or other identifying information of any target electronic device or any cell phone or other electronic device owned, used, or possessed by any subject person.

In addition, this warrant authorizes a search of the target location and the target vehicle for the following physical items:

10.     Clothing, including shoes, that may have been worn and bags, including backpacks, that may have been used by any subject person or his or her associates or to which any such person has access.

11.     Firearms and items that appear to be firearms.

12.     Cash, other valuables and assets, and stolen property.

B-2

13.     Cell phones that may be stolen property.

In addition, this warrant authorizes a search of any target electronic device for the following:

14.     Forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when it was used.

This warrant authorizes the search for and seizure of records, documents, photographs, and other items regardless of the format in which they may be found, including electronic formats. For any electronic device the search of which is authorized by this warrant, the device may be seized for a later review. This warrant also authorizes the seizure of items that may be helpful or necessary to access, read, or search such electronic devices. Those items may include passwords, physical security tokens, software, peripheral devices, and instructions for use.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

20-mj-8277-DLB

**Case No.** _____

**UNITED STATES OF AMERICA**

**v.**

**Michael Anthony Roundtree Jr. et al.**

**Defendants.**
_____/

### CRIMINAL COVER SHEET

1.  Did this matter originate from a matter pending in the Central Region of the United States
    Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?     ___ Yes  ✓ No

2.  Did this matter originate from a matter pending in the Northern Region of the United States
    Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?     ___ Yes  ✓ No

3.  Did this matter originate from a matter pending in the Central Region of the United States
    Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?     ___ Yes  ✓ No

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

BY: _____

Marc Osborne
ASSISTANT UNITED STATES ATTORNEY
District Court No. A5500796
500 South Australian Avenue, Suite 400
Miami, FL 33172
Tel:       (561) 209-1014
Fax:       (561) 820-8777
Email:    marc.osborne@usdoj.gov

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**:  Michael Anthony Roundtree Jr.

**Case No**: 20-mj-8277-DLB

**Criminal Complaint Charges**:

Title 18, United States Code, Section 1951 – Interference with commerce by threats or violence
\* **Max. Penalty**: 20 years' imprisonment;  a fine of up to $250,000;  and up to 3 years of supervised release

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**